**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MOVADO GROUP, INC., AND MOVADO LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.______________** |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs Movado Group, Inc., and Movado LLC (collectively, "Movado" or "Plaintiffs"), by and through its counsel, Baker McKenzie, hereby bring this Original Complaint against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and hereby allege as follows:

## I. PARTIES

1. Plaintiff Movado Group Inc. is a corporation organized and existing under the laws of the State of New York with a principal place of business at 650 From Road, Suite 375, Paramus, New Jersey 07652. On October 27, 1998, Plaintiff Movado Group, Inc., assigned all right, title and interest in and to trademarks asserted in this action to Movado Corporation, including but not limited to the trademarks MOVADO®,  and . On February 1, 2001, Movado

Corporation converted from a corporation to a limited liability company and became known as Movado LLC.

2. Plaintiff Movado LLC ("Movado LLC") is a wholly owned subsidiary of Movado Group, Inc., and a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 501 Silverside Road, Wilmington, Delaware 19809. Movado LLC owns all right, title and interest in and to the trademarks asserted in this action, including but not limited to the trademarks MOVADO®,  and .

3. Upon information and belief, Defendants are individuals and business entities who primarily reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of fully interactive, commercial online marketplaces listed in Schedule A. Each Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell counterfeit Movado products to consumers within the United States, including the State of Illinois.

4. On information and belief, many of the Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products and to provide retail and store services using counterfeit versions of the Movado trademarks in the same transaction, occurrence, or series of transactions or occurrences.

5. Defendants' true identities are currently unknown because Defendants, in perpetrating their illegal and unauthorized actions, have intentionally hidden their identities and the full scope of their counterfeiting operation. In the event that Defendants provide additional

credible information regarding their identities, Movado will take appropriate steps to amend this Complaint.

## II. JURISDICTION AND VENUE

6. This is an action for trademark infringement and counterfeiting. As set forth below, Defendants' unlawful actions constitute federal trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. §1114, false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510,*et seq*. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. §1051, *et seq.*, 28 U.S.C. §1338(a)–(b) and 28 U.S.C. §1331.

7. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the claims that arise under the laws of the State of Illinois because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391, and this Court may exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the online marketplaces as defined and identified in Schedule A attached hereto (collectively, the "Online Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more Online Stores through which Illinois residents can purchase products using counterfeit versions of Movado's trademarks. Upon information and belief, each of the Defendants has targeted Illinois residents by operating Online Stores that offer to sell, sell, accept payment in U.S. dollars, and ship products to the United States, including Illinois, that use

counterfeit versions of Movado's federally registered trademarks. Each of the Defendants is, thus, committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Movado substantial injury in the State of Illinois.

## III. FACTUAL BACKGROUND

9. Like many other luxury goods manufacturers, Movado has been battling counterfeit goods throughout the globe. In recent years, this problem has increased exponentially with infringements occurring through online marketplaces and websites. This action therefore has been filed by Movado to stop the online sale of unauthorized and unlicensed counterfeit watches and other products using Movado's federally registered trademarks (the "Counterfeit Products"). The sellers of these Counterfeit Products are trading on Movado's goodwill and reputation by offering for sale and/or selling goods bearing Movado's federally registered trademarks, including



MOVADO®, and , and/or other MOVADO-formative marks.

10. Upon information and belief, Defendants create the Online Stores and design them to appear to be selling genuine Movado branded products, while actually infringing Movado's trademarks and selling Counterfeit Movado Products to unknowing consumers. The Online Stores have common features or other identifying elements, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants further attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Defendants have and continue to willfully and maliciously advertise, offer for sale, and sell Movado knock-offs.

11. Movado is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Movado has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

12. In particular, Movado is a world-famous premier watchmaker who designs, manufactures and distributes watches worldwide from eleven of the most recognized and respected names in time: MOVADO®, MVMT®, OLIVIA BURTON®, EBEL®, CONCORD®, COACH®, TOMMY HILFIGER®, HUGO BOSS®, LACOSTE®, SCUDERIA FERRARI®, REBECCA MINKOFF® and URI MINKOFF®.

13. MOVADO®, the flagship brand within the Movado Group trademark portfolio, was founded in Switzerland in 1881. Recognized for design innovation and excellence, Movado has earned more than 100 patents and 200 international awards since 1881. Movado is the hallmark of some of the most famous timepieces ever created, notably the Museum® Watch with its celebrated single dot dial. Designed in 1947 by artist Nathan George Horwitt, the Museum® Watch is regarded today as an icon of Modernism and is on display in the permanent collections of several museums worldwide. When Horwitt's dial design was selected for the permanent collection of New York's Museum of Modern Art, in 1960, it became the first watch dial ever awarded this distinction. The name "Museum Watch" derives from this recognition. Movado's collection of watches is distinguished by this legacy of design innovation and a dedication to the future of time.

14. Movado's collection of watches includes Movado Bold®, Movado® Circa, Movado® Connect, Movado® Heritage® Series, Movado® NGH, Movado® Ultra Slim,

Museum® Classic, Museum® Sport, Red Label®, Rondiro, Esperanza®, La Nouvelle, Modern Classic, Series 800®, 1881 Quartz, Sapphire, Sapphire Synergy, Vizio®, Aleena, Amorosa®, 1881 Automatic, Eliro®, and Movado® Face.

15. Movado's timeless watches are recognized worldwide by the trademark MOVADO or its registered trade dress marks featuring the distinctive and recognizable single, circular dot at the 12 o'clock position, and . Movado products typically include at least one of Movado's federally-registered trademarks. Often multiple MOVADO trademarks are displayed on a single product.

16. Movado has been using the MOVADO and MOVADO-formative trademarks in commerce on and in connection with watches and related products continuously and consistently for decades. Since at least as early as 1927, Movado has prominently and extensively marketed, advertised, and promoted its MOVADO brand timepieces throughout the United States.

17. Movado is the owner of the following federal trademark registrations, among others, (collectively the "MOVADO Trademarks"):

| Trademark | Registration No. | Goods |
|---|---|---|
| MOVADO | 1,294,171 | Watches and parts therefor |
| MOVADO | 3,120,578 | Jewelry; rings; bracelets; necklaces; cufflinks; earrings; pendants |
| MOVADO | 3,785,542 | Horological and chronometric instruments |
| MOVADO BOLD | 4,166,814 | Horological and chronometric instruments |
| MOVADO | 5,254,113 | Smartwatches and wearable digital electronic devices |
| HERITAGE | 1,494,165 | Watches |

| MUSEUM | 1,114,067 | Wrist watches |
|---|---|---|
| VIZIO | 2,098,170 | Watches |
| ELIRO | 2,493,126 | Watches |
| ESPERANZA | 2,859,263 | Watches |
| AMOROSA | 2,767,577 | Watches |
| RED LABEL | 3,782,004 | Horological and chronometric instruments |
| SERIES 800 | 3,739,784 | Horological and chronometric instruments |
| | 1,398,457 | Watches |
| | 1,381,257 | Watches |

18. The above-listed registrations for the MOVADO Trademarks are valid, subsisting, and in full force and effect. Moreover, many are incontestable pursuant to 15 U.S.C. § 1065, and serve as *prima facie* evidence of the validity of the registrations, Movado's ownership of the MOVADO Trademarks, and of Movado's exclusive right to use the MOVADO Trademarks in commerce on or in connection with all of the goods identified in the registrations pursuant to 15 U.S.C. § 1057(b) and § 1115(a). Furthermore, the registrations are constructive notice of Movado's claim of ownership of the MOVADO Trademarks pursuant to 15 U.S.C. § 1072. True and correct copies of the United States Registration Certificates for the above-listed MOVADO Trademarks are attached hereto as **Exhibit 1.**

19. The MOVADO Trademarks are exclusive to Movado and are displayed extensively on or in close connection with Movado products, Movado packaging, and in Movado's marketing and promotional materials. Movado products have long been popular around the world and have

been extensively promoted at significant annual expense. Movado products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Movado products have been featured in leading publications and newspapers such as *InStyle*, *Harper's Bazaar*, *Elle*, *Vanity Fair*, *GQ*, *Men's Health*, *Golf Digest*, *Boston Common*, *Esquire*, and *The New York Times*. Because of these and other factors, the Movado brand and the MOVADO Trademarks have become famous throughout the United States.

20. To maintain the prestige of the Movado brand and MOVADO Trademarks and to ensure that consumers receive the type of attention commensurate with Movado's reputation for luxury and quality products, Movado authorizes its watches and other products to be sold exclusively through Movado's network of authorized retailers around the world, as well as online at www.movado.com. Only watches purchased from Movado or through an authorized retailer are accompanied by a valid Movado warranty/guarantee.

21. Movado operates social media accounts to promote and advertise its products, including Facebook, Twitter, and Instagram. Movado's Instagram account, @movado, has over 230,000 followers. The recognition of the Movado brand and MOVADO Trademarks among the public at large is enhanced not only by Movado's own extensive advertising efforts and select distribution, but also by fashion editorials and press coverage of MOVADO, as well as the coverage of Movado on social media platforms by influencers, celebrities and watch aficionados. Such press coverage reaches millions of consumers.

22. As the result of Movado's exclusive and extensive use of the MOVADO Trademarks, Movado is recognized as the source of any products bearing one or more of the MOVADO Trademarks. Due to the worldwide public acceptance, overwhelming fame, and great recognition of products bearing or sold under the MOVADO Trademarks, these trademarks have

come to represent an enormous amount of goodwill for Movado and have caused goods bearing the MOVADO Trademarks—even unauthorized goods—to be in great demand.

23. Movado, however, has gone to great lengths to protect its name and enforce the MOVADO Trademarks. Movado actively seeks to protect and enforce its intellectual property rights by working with industry associations, anti-counterfeiting organizations, private investigators and law enforcement authorities, including customs authorities in the United States and internationally. Through those efforts, Movado has discovered hundreds, if not thousands, of counterfeit products being sold at physical locations and, more recently, over the Internet. Indeed, Movado has seen unauthorized use of one or more of the MOVADO Trademarks rise dramatically through the proliferation of online stores, such as those listed on Schedule A.

24. Commercial Internet stores, like the Defendants' Online Stores, are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. Internet websites like the Defendants' Online Stores are also estimated to annually contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue.

25. Here, Defendants facilitate sales by designing the Online Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Specifically, each of the Online Stores operated by Defendants use one or more of the MOVADO Trademarks without authorization on or in connection with the sales of products that are not genuine Movado products. For example, the Defendants use the trademarks MOVADO, , or for the purpose of confusing consumers into believing that they are purchasing a genuine Movado product. Defendants' Online Stores also appear legitimate and

accept payment in, among others, U.S. dollars via major credit cards, Alipay, Western Union, and PayPal. Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, Discover®, American Express®, and/or PayPal® logos. To be clear, Movado has not licensed or authorized Defendants to use any of the MOVADO Trademarks, and none of the Defendants are authorized retailers of genuine Movado products. Thus, Defendants are using trademarks owned by Movado without authorization and creating confusion about the source of the counterfeit products being sold through the Online Stores.

26. Many of the Defendants also deceive unknowing consumers by using the MOVADO Trademarks without authorization within the content, text, and/or meta tags of their online marketplaces in order to attract various search engines crawling the Internet looking for sites relevant to consumer searches for Movado products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Online Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Movado products. Other Defendants only show the Movado products in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Movado products.

27. As further evidence of their illegal activity, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Online Stores. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope

and interworking of their counterfeiting operation, and to avoid being shut down.

28. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Online Stores. For example, counterfeit products for sale in the Online Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the counterfeit products were manufactured by and come from a common source and that Defendants are interrelated. The Online Stores also include other notable common features, including use of the same shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Movado's official website, www.movado.com.

29. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases.

30. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite enforcement efforts by brand owners. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court.

31. Defendants, without any authorization or license from Movado, have knowingly and willfully used and continue to use the MOVADO Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United

States and Illinois over the Internet. Each Defendant Online Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

32. Defendants' use of the MOVADO Trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit Movado products, including the sale of counterfeit Movado products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Movado.

## IV. CAUSES OF ACTION

## COUNT ONE – TRADEMARK INFRINGEMENT (15 U.S.C. §1114)

33. Movado incorporates by reference paragraphs 1 through 32 as if fully set forth herein.

34. Movado is the exclusive owner of the MOVADO Trademarks. Movado's federal registrations are active, valid, and in full force and effect.

35. Defendants, without Movado's authorization, have used and continue to use in commerce counterfeit imitations of the federally registered MOVADO Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit watches bearing one or more of the MOVADO Trademarks.

36. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, or deception among customers, potential customers, and/or the public as to the origin, sponsorship, or approval of the Counterfeit Products. Consumers are likely to be misled into believing that the Online Stores and sale of products bearing the MOVADO Trademarks are licensed, sponsored, or otherwise approved by Movado.

37. Upon information and belief, Defendants were on both actual and constructive notice of Movado's exclusive rights in the registered MOVADO Trademarks when they adopted the MOVADO Trademarks for use in advertising and marketing in their Online Stores, which offer for sale and sell infringing and counterfeit products that exactly or very closely copy those sold by Movado under the MOVADO Trademarks. Defendants' actions are designed to trade on the MOVADO Trademarks.

38. Defendants' unauthorized use of the MOVADO Trademarks is willful, in bad faith, and with full knowledge of Movado's prior use of, exclusive rights in, and ownership of the MOVADO Trademarks, with full knowledge of the goodwill and reputation associated with the MOVADO Trademarks, and with full knowledge that Defendants have no right, license, or authority to use the MOVADO Trademarks or any other mark confusingly similar thereto. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. §1117(a).

39. Defendants' acts are intended to reap the benefit of the goodwill that Movado has created in its Marks and constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114(1).

40. As a result of Defendants' conduct and infringement of the MOVADO Trademarks, Movado is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity, including under 15 U.S.C. § 1117.

41. Defendants' conduct has caused and is causing immediate and irreparable injury to Movado and will continue both to damage Movado and deceive the public unless enjoined by this Court. Movado has no adequate remedy at law for ongoing infringement.

**COUNT TWO – TRADEMARK COUNTERFEITING (15 U.S.C. §1114)**

42. Movado incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

43. This is an action for trademark counterfeiting against Defendants based on its promotion, advertisement, distribution, sale and/or offering for sale counterfeit watches and other products bearing one or more of the MOVADO Trademarks.

44. Defendants' counterfeiting activities are likely to cause and actually are causing confusion, mistake, and deception among the general consuming public as to the origin and quality of the Counterfeit Products.

45. Defendants' illegal acts are intended to reap the benefit of the goodwill that Movado has created in its MOVADO Trademarks and constitute counterfeiting of Movado's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

46. As a result of Defendants' conduct and infringement of the MOVADO Trademarks, Movado is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity, including under 15 U.S.C. § 1117.

47. Defendants' conduct has caused and is causing immediate and irreparable injury to Movado and will continue to both damage Movado and deceive the public unless enjoined by this Court. Movado has no adequate remedy at law for ongoing infringement.

**COUNT THREE – FALSE DESIGNATION OF ORIGIN (15 U.S.C. §1125(A))**

48. Movado incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

49. Upon information and belief, Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Movado Products has created and is creating a likelihood of confusion,

mistake, and deception among the general public as to the affiliation, connection, or association with Movado or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Movado.

50. By using the MOVADO Trademarks on or in close connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

51. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. §1125.

52. As a result of Defendants' conduct, including the violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125, Movado is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity.

53. Defendants' conduct has caused and is causing immediate and irreparable injury to Movado and will continue to both damage Movado and deceive the public unless enjoined by this Court. Movado has no adequate remedy at law for ongoing infringement.

**COUNT FOUR – VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS §510, *et seq.*)**

54. Movado incorporates by reference paragraphs 1 through 53 as if fully set forth herein.

55. Defendants have knowingly and willfully engaged in deceptive trade practices violating Illinois law by passing off their Counterfeit Movado Products as those of Movado, causing a likelihood of confusion and/or misunderstanding as to the source of their goods or services, causing a likelihood of confusion and/or misunderstanding as to an affiliation,

connection, or association with genuine Movado Products, using deceptive representations or designations of origin in connection with Movado Products, and engaging in other deceptive conduct which creates a likelihood of confusion or misunderstanding among the public.

56. Defendants' infringing acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

57. As a result of Defendants' conduct, including the violation of the Illinois Deceptive Trade and Practices Act, Movado is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity.

58. Defendants' conduct has caused and is causing immediate and irreparable injury to Movado and will continue to both damage Movado and deceive the public unless enjoined by this Court. Movado has no adequate remedy at law for ongoing infringement.

## V. JURY DEMAND

59. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Movado demands a trial by jury of all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Movado prays for relief as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the MOVADO Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine

Movado product or is not authorized by Movado to be sold in connection with the MOVADO Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Movado product or any other service or product produced by Movado that is not Movado's or not produced under the authorization, control, or supervision of Movado and approved by Movado for sale under the MOVADO Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold or provided under the authorization, control, or supervision of Movado, or are sponsored by, approved by, or otherwise connected with Movado;

d. further infringing the MOVADO Trademarks; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Movado, nor authorized by Movado to be sold or offered for sale, and which bear any of Movado's trademarks, including the MOVADO Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Movado's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, Amazon, AliExpress, DHgate, and Wish web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the MOVADO Trademarks; and

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the MOVADO Trademarks.

3) That Defendants account for and pay to Movado all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the MOVADO Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. §1117;

4) In the alternative, that Movado be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. §1117(c)(2) of $2,000,000 for each and every use of the Movado Trademarks;

5) That Movado be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other legal or equitable relief that this Court deems just and proper.

Dated: May 28, 2019

*/s/ Shima S. Roy*

**Shima Roy**
shima.roy@bakermckenzie.com
**Katie Fisk**
katie.fisk@bakermckenzie.com
**BAKER McKENZIE**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Telephone: 312-861-8000
Facsimile: 312-861-2899

**W. Bart Rankin** *(pro hac vice* pending)
w.rankin@bakermckenzie.com
**BAKER McKENZIE**
1900 North Pearl Street, Suite 1500
Dallas, Texas, 75201
Telephone: 214-978-3000
Facsmile: 214-978-3099

ATTORNEYS FOR MOVADO GROUP, INC. AND MOVADO LLC